Thank you, Your Honor, and may it please the Court. My name is Tracy Staub. I'm from the Federal Defenders in Spokane, and I'm here on behalf of Mr. Pena. He's filed this appeal in this case. Case centers on the validity of a search warrant used to search Mr. Pena's home. And the brief points out three basic sub-issues on the validity of the search warrant. But the case – but stepping back from the details of this case, it prevents a very important issue concerning the line between legal and illegal pornography. The facts are pretty straightforward and set forth in the brief. A patrol officer in Perrysburg, Ohio, who does not have any training in determining the age of subjects from pictures such as this, is emailed six photographs with no description. Excuse me, counsel. Could I ask a question that's bothering me? I found much of your argument quite persuasive. Maybe I should say that now. Well, I'm just one of us, and we don't confer in advance. The part that bothered me most about your side of the case is, let's say, no reason why the says he can, or two of them say they can. And more persuasively, I think, the communications on this site suggested that that's what Pena is looking for, and that's what he's getting. Why isn't that enough, together with the somewhat weak testimony of the policeman in the affidavit? Are you referring to when Detective Detterman gets up during the Franks hearing and says, during the time that I've been on this site, these are the communications that I've had with other people? I'm referring to the part of the affidavit where he describes what the site is and the communications is providing context for the pictures. Let's say the I don't know, but judging from the context, the kind of site this is, they're supposed to be under 18. And that's similar to the Gord case, Your Honor, where they had talked about a person's subscription to an Internet access. The difference in this case is that Detective Detterman does not set forth any indication that this screen name had ever been on this website before, and that he had communicated with this screen name, that the person knew or had clicked on Detective Detterman's profile and thought he was communicating with a 14-year-old. There's nothing like that in there. All that Detective Detterman says is that he was on it one time, saw a list being created, and was emailed six pictures. He doesn't claim that he ever communicated or saw or knew anything about the screen name before that moment in time. So what may have gone on... What's the site? I believe it's ER 91, 9091. No, no, I mean the website. The website, I think, is just... I thought Judge Klein felt... It's pre-10, I think. Related to the name of the website. That's right. Pre-10, which could be pre-10 or pre-teen. Pre-10 looks like a purposely misspelled pre-teen. It could be pre-teen. It could be pre-10. It could be a lot of things. It could be. But this is just search warrant, not beyond a reasonable doubt. And I understand that. But I don't think that the name of the website in and of itself is so particular, as in Lolita Girls, that it would tip the scales. Because it could be pre-10, it could be pre-teen. Maybe I'm wrong in my recollection, but I thought that two officers said that they thought that the girls in the pictures were minors. And there was some disagreement. You know, are they under 18, but not 13? You know, are they 13 or 15? That is... So what? If they both thought these were minors, why doesn't that give fair probability of finding evidence of crime to meet the search warrant standard under Gates? Well, there's two parts to that, apparently. The conclusory opinion is the first issue that we raise. In other words, Detective Bartwell says it's hard to tell the ages, but they're all minors. What he doesn't tell the magistrate is that it's really hard to tell if these are minors. And by submitting and reaffirming Detective, I'm sorry, Detterman's opinion of age, even though he disagreed with it, what he's doing is eliminating the margin of error here. If a magistrate judge hears that the ages are hard to determine, but, you know, we're talking 10-, 11-, 12-year-old, even if there's a two- or three-year margin of error here, we're well below 18. There's no problem here. But in this case, that margin of error was actually much higher toward 18. And I think that if Detective, and I'm getting my detectives mixed up, Detective Bartwell, is that the other one? Detective Detterman, I've got two cases here. So I'm trying to keep my ---- Don't worry about it. We won't remember their names either. The second detective, if he had indicated that, you know, I have real concerns or doubts about whether these are minor subjects, then the magistrate would have taken a second look. But in ---- Wait a minute. It said that. It said they had doubts about whether they're minors, did they? It said the ages are difficult to estimate. Yes. I thought they ---- There was some ---- No, I ---- Whether they were in the particular age pinned on them was right. But go ahead. You tell me what's in the record. Well, Detective Bartwell, that's his name, in the appendix that I put in the back, I pretty much set out, here's what they say about the different ones. And he says, I would, you know, on Exhibit 8, I would say the age was a little bit higher than 10 to 12. So he's disagreeing with Detective Detterman's opinion there. But he's not saying they're adults, right, on that one, on that picture? No, he's not. He's not. Even if he said one picture he thought was an adult, he's still saying some of them are minors, isn't he? He is. Yes, he is. So, again, it's not an absolute certainty standard. No, it's not. Fair probability. Why isn't this enough to form a fair probability, maybe with the emphasis on fair? Why isn't it fair? Well, I think that, again, because it's whether you're looking at it from the four corners, whether the four corners establish probable cause, and the question there is their conclusory opinions. If you're going to the Franks hearing, where that information is supplemented and brought in, I think that the problem that you have here is that his opinions weren't objectively reasonable, if that answers the Court. One thing that I do want to get in here before I run out of time, in Ashcroft v. Free Speech, the Supreme Court said, struck down a statute that had prohibited the possession of pornography where the subject's images appeared to depict minors, and it said that's unconstitutional. If they're adult actors and they only appear to be underage, that is protected speech. In this case, what the government is saying is that, well, even in light of Ashcroft and Free Speech, if somebody possesses images that appear to be a minor, it may be legal, but it will still subject them to a search warrant. So it might be legal to possess it, but it's going to subject you to an invasion of your home. I guess the problem with your case is that not all of the pictures were suspect. At least some that were pretty clear were minors. Isn't that right? There was one who was clothed, so that was not a pornographic picture. And that was Exhibit 7, I believe. So everybody agreed that's a minor, but she was clothed. It was not a pornographic picture. On my count, it was 2 out of 5. And again, I refer back to the appendix that I put together because that helped me to visualize all of it. But I think that Dr. Sims indicated that on pretty much all of them, he could not give an opinion with any degree of certainty that they were over or under 18. I only have a couple seconds left, so if that may. I'll save it. Thank you, counsel. May it please the Court. Good afternoon. My name is Stephanie Whitaker. I'm with the United States Attorney's Office in Spokane. And I'd first like to take a moment to thank this Court and counsel for considering my motion to reschedule this argument. I do appreciate the considerations of the Court and counsel on that matter. Counsel, I have some questions about your side of the case. Yes. I don't know quite how you can tell what the age is of females once they're past puberty. And I read the testimony of the pediatrician, and he basically said you can't tell on a lot of these girls. He thought a tattoo indicated she was probably over 18. They can still be teenage girls, apparently, and it's legal. He thought another one, the wedding ring indicated she was over 18. He said on some of them you'd have to ask. He can tell a 10-year-old from somebody in their late teens. But closer than that, it's hard. Now, I was thinking pediatricians seen a lot of naked under-18 girls. Policemen, even if they claim to be trained, I don't know what training means. They can't possibly be parading a bunch of naked girls in front of them and telling them press the button for the age, and they do it until they guess right. I don't see how the policeman's affidavit can be anything except these guys were on a site involving pre-18 girls, and that's enough. I don't know if it is enough. And if it isn't, I don't know what else you've got because of the difficulty of saying what a girl's age is. Your Honor, respectfully, I have several answers to that. First off is to Dr. Sims' testimony. I believe his testimony was actually that it wasn't unreasonable to say these girls were under the age of 18. I read his testimony, so I cannot be sold on anything that's not a fair presentation. He said it's not unreasonable to think they're under. It's not unreasonable to think they're over. That is correct. And that with respect to all that Dr. Sims was, I think, highlighting in the course of that hearing was to say that without absolute certainty, he can't testify as to age. And he was a prosecution witness. But part of the ---- He's a trained pediatrician, and he can't swear that they're under 18. But he also couldn't say that it was unreasonable. And I think what this Court has put forth to law enforcement for purposes of a probable cause standard is that they have to rely on the totality of the circumstances, not only in the image being sent, but I disagree with respect to what their training does allow them and does show them. Can you tell me what their training is? I didn't see anything in the record, but maybe I missed it. I believe both Detective Detterman specifically testified that he had viewed thousands of images of child pornography. And in viewing thousands of images of child pornography, he's also been shown images where the child is known. And so he knew the age of the child at the time the image was taken. And you get a sense once you have seen, unfortunately, that number of images. He says here, female approximately. This is Detterman. He says female approximately 14. I don't know how you tell a 14-year-old from an 18-year-old. And he doesn't say. I don't think that you can exactly tell. I think that there's always a built-in margin of error. But the issue here before this Court is based upon the... If it was 10, like in, I think it was Billingsley, the case that you relied on, that was pre-puberty. That's pretty easy to tell. Well, I think that in the totality of the circumstances, Your Honor, including their experience, including seeing those thousands of images that they have seen before, knowing what the ages of some of those children were, in the context of which the image was sent, this Court does not require there to be absence. How can their training be better than a pediatrician's guessing a girl's age? They're not necessarily guessing all the time. We do have known series. We have thousands of images of known series. But they get to compare that based upon what they see every day. And when you go, unfortunately, through these images every day, you begin to get a sense for some of these images. And I don't believe any detective could testify before this Court that they would know the exact age of a minor depicted in a photo unless they knew the age of that child by an identified victim series. But what they can say... I can't see what there is to the circumstances besides the site. I guess if I was looking at a site that appeared to be featuring or claimed to be featuring pre-teen... Well, I think it was... Well, I think here it's beyond just being pre-10 as misspelled. It also listed a series of numbers, 8, 9, 10, 11, 12. They're obviously over 10, as I understand. It included 8, 9, 10, 11, 12. And in this series, I don't think there was any dispute or any argument that the images here were under the age of 10. But you do have a site that's representing itself, not just pre-teen, but giving a list of ages of 8, 9, 10. When you say there isn't any dispute, you mean you're conceding none of them were under 10? I'm stating that the testimony indicated it was under the age of 10, or that there was any representation in the affidavit that they were under the age of 10. So pre-10 does not mean under the age of 10, or else it's a misrepresentation by the site presenter? I think the site presenter was certainly trying to solicit to a certain demographic, and that demographic including 8, 9, 10, but also ages 11, 12, older. And here I think another distinguishing factor is that this person was file sharing with somebody who was representing themselves as a 14-year-old female. Is it reasonable under those circumstances that he's going to send images that he believes are like-aged, like-minded with somebody he believes is a minor at the time? When I was in high school, the girls used to be able to get beer. Age was 18 in those days. And the 14-year-old girls could usually pass. The boys couldn't. And, gee, if they could get beer, because it's hard to judge their age from people that ran bars and didn't want to get in trouble. Your Honor, but here again, I think you're relying and you get to rely on the detective's background, training, and experience. I do not think that is insignificant. I don't know anything about his background, training, and experience beyond what he claims, and he doesn't really give me any details about what it is. That's why I'm so influenced by the pediatrician's background, training, and experience. That I know something about. Your Honor, I believe he did testify as to his experience in child pornography investigations, and I keep going back to the experience of viewing these images over and over again. The trained police were all over the place in age estimates. They didn't even agree with each other. But they all were consistent in agreeing and representing accurately to the issuing judge that they were under the age of 18, that they were minors, although they might have disagreed as to the specific age. I do not think that is required, and I also do not think that equates to a false statement or misrepresentation to the magistrate judge. I believe the one detective accurately stated the ages are difficult to estimate. I'm not concerned about the police lying. The Franks interview struck me as at least not an issue that attracted me. I'm concerned once you say the police are telling the truth, do they have probable cause on these affidavits? I believe that there is sufficient probable cause. I believe that just as this Court questioned defense counsel, you can't look at these pictures in a vacuum. You can't look at them by itself. They're not part of the record. We presented them in a sealed part of the record as well as a sealed part of the record. Oh, well, we get the excerpts. I don't think they're in the excerpt. I believe I thought they were maintained numbers of 7 through 11 from, at least that was the intention of the United States. And I think we represented in a footnote that that would be included as a sealed part of the record. And I apologize if the Court, I was unaware. You understand the difference between record and excerpts? Yes, Your Honor. We – but because of the nature of the images, we asked to present them sealed. And the magistrate issuing the warrant didn't see the pictures, right? She did not look at them. There's no indication she did. They were certainly offered. They were offered as attachments. And the magistrate judge did not take the detective up as far as he could recall on reviewing that. But again, I don't believe that's necessary. And as this Court in Battersell foreclosed, it's not absolutely necessary. It's ideal in certain circumstances, but it's not necessary. And here, there were sufficient description, detailed description of each of those particular photographs. Again, simply because the age estimate was not certain, or we will never – there will always be a margin of error unless we know who that child is in that photo. And there – Counsel, are you relying partly on just good faith in executing this warrant and getting the warrant and executing it? Were the officers acting in good faith? I think that Detective – that Detective Bardwell from Yakima certainly was acting in good faith on the representations of Detective Detterman. But he did more than that. He also attached his affidavit and his representation so that the issuing court could consider both those, not only his detailed description, but also Detective Bardwell's indication that it's difficult to estimate, but appeared to be minors. And they were consistent in that testimony throughout the motion to suppress. So you would be comfortable with our deciding it on the basis of good faith? I think that there's more than – I think that there's more than good faith reliance here. Again, in the totality of the circumstances, you have a website that is catering to people who are seeking preteens. Well, I understand all your other arguments. My question was, would you be comfortable if we just simply decided it on good faith? I think good faith plays a part, but again, I think that there is sufficient evidence of probable cause in the four corners without having to rely simply on good faith, because you also have Detective Bardwell reviewing it with another colleague, and both of them, based upon their training, believing, consistently believing these images contained minors. They may not agree on the exact age. I do not believe that that is necessary. I do not believe that's required in simply establishing probable cause, as there are fair probability and under all of the totality of circumstances there was. Thank you, counsel. Just briefly, Your Honor, you indicated can we just decide this on good faith. And I'm not in a position to ask favors, but I would – excuse me – just make a simple observation. When published cases avoid the probable cause analysis and go straight to a good faith analysis, it has the effect of lowering the standard of probable cause for search warrants. A court may address a particular fact scenario and decide that while probable cause is lacking, the failure was not objectively unreasonable, and that good faith presumes the police know the law. So the next time a similar fact scenario comes up, the police would not be able to fall back on good faith. But if the court never decides that probable cause issue, police can continue to use that fact scenario and claim good faith. So if it's going to be a published decision, and again, I'm not in any position to make any suggestions, it would be nice if the court went through the probable cause analysis, even if it did find good faith, because then it can't be used over and over and over again. Roberts. U.S. v. Kenya is submitted.
judges: B. Fletcher, Kleinfeld, Gould